Good morning. May it please the court, my name is John Carter of the Nashville-Davidson County, Tennessee Bar. I represent Officer Chad Estes, defendant in the action and appellant in the appeal. I've reserved three minutes for rebuttal. This action arises from the arrest of the plaintiff, Dr. Wynn, on May 5, 2010, on charges which included felony fleeing and evading a police officer. Dr. Wynn has brought this action under 42 U.S.C. in 1983, alleging arrest without probable cause and excessive use of force in violation of the Fourth and Fourteenth Amendment. It's an appeal from a denial of summary judgment on the issue of qualified immunity. Obviously, the court's thoroughly read all the briefs, so if I may, there are three points that I'd like to tease out, which I think are a distillation of our brief and our argument on appeal. The three points are three errors which we contend the lower court made in its denial of qualified immunity. I'm going to summarize these three points and then I'm going to come back and flesh each of them out a little. The first mistake the court made was finding that there was a dispute of fact. In fact, the court went so far as to say that the facts are hotly disputed. Dispute of fact on both claims or just one? I believe on both claims, Your Honor. I can't answer that right now. No, you say the first error the district judge made was finding dispute of fact. I'm asking, you claim an error in finding dispute of fact as to both the false arrest and the excessive force or just one or the other? I understand, Your Honor. The court found dispute of fact with respect to both of those claims. You're claiming that that is error as to both? That's correct. I apologize for not being clear. If you're saying that the district court on the record came to wrong conclusions as to what facts are genuinely in dispute? Errors of findings of genuineness and materiality. Those are facts you're saying. Well, because they are, it's categorically beyond our jurisdiction to review those on an interlocutory basis under many decisions including our Romo decision. Of course. So how can you say the first issue is whether the district court properly determined certain facts if the district court gets to an interlocutory appeal? Well, if I may respond in two ways. One is we actually have adopted the plaintiff's version. We weren't disputing those facts. We mentioned a contrary version. Even so, what we follow for the limited purpose of an interlocutory appeal to avoid piecemeal appeals, we follow what the district court determined as facts, regardless of how the Unless there's a videotape or something like that. My understanding of Sixth Circuit precedent, and we cited the case of Chapel v. City of Cleveland in our briefs, that was a case where the court specifically stated that the appellate court does not have to defer to lower court findings of materiality or genuineness. When the plaintiff has made summary conclusions, summary conclusive assertions, this court does not have to defer because those aren't actually material facts that are disputed. Those are summary conclusive assertions that aren't a material genuine dispute of fact. I'm not sure I'm following that, but go ahead. Well, an example is that the plaintiff says that she made herself clear and says that she received permission. Well, if the district court says she made herself clear, that's a fact. She either made herself clear or she didn't make herself clear, whatever that fact means. If the district court says she made herself clear and that's how the district court is determining whether that's in light of the fact that she made herself clear there's a constitutional violation, we're stuck with that on an interlocutory appeal, aren't we? You're going to second guess whether she made herself clear when the district court is assuming she made herself clear? With respect, Your Honor, my reading of Chappell is that that case gives the court the right to re-examine that. Have you read Romo's case? I have, Your Honor. Why doesn't that... You can't divide up facts into how general they are. My understanding of Romo, and Your Honor obviously has a better understanding of it than I do, my understanding of it is that the materiality of those factual disputes was never at issue. No one raised the issue of whether... I can understand how you could say the court assumed that certain facts could be proven to a jury, but they're not relevant to the legal issue. That's something you could review, but that question is whether those facts are relevant, which I assume you don't have to assume that. I agree with that. That makes sense. Then that was all that I was attempting to say. Then I was misled by your statement that these are factual issues. You've stated better than I did exactly the way that I would frame it, that whatever disputes there are don't go to the legal issues that are determinative of this case. Then I apologize. The second mistake that I would highlight that the lower court made was in viewing much of the encounter from the plaintiff's perspective as opposed to the officer's perspective. When as a legal matter, under the law of both probable cause and whether there was probable cause for the arrest, and with regard to the amount of force that was used, those determinations are to be made from the officer's perspective. Let me ask this then from the officer's perspective. Isn't the best derivable reading of what the district court was assuming were the facts, or assuming that those facts could be found by the jury, that the officer was aware that she was going for emergency medical purposes and said, in effect, go ahead, I'll follow you to the hospital? Isn't that what the district court basically, I don't have the words of the district court's opinion, but basically that's what the district court is saying a jury could find? I think, and I don't have the words of the district court in front of me either, but my understanding of what the court found was he credited her subjective belief that she had permission to leave the traffic stop. Without seeing that from the officer's perspective. But when he credits that, that's a fact that we assume, right? You keep pointing to say, well, these facts aren't supported, but we're stuck with the facts. We're stuck with the facts that the district court assumes. Sure, sure. But kind of phrasing it as your honor did several minutes ago, whether that's a fact that's legally relevant to the outcome of this case does matter. Here, it says, here, I've got the opinion before me now. She claims she made it, it's a question for the jury because she claims, which is another way of saying the jury could find, that she made it unmistakably, I'm on page 15 of the opinion, she made it unmistakably clear to the officer that she was going to the hospital to deliver a baby. She understood the officer was following her to the hospital and providing her an escort. She was wearing scrubs and had her lab coat next to her in the car. She was not arrested until she was at the hospital headed towards the entrance. Now, I read that as saying that the district court says that a jury could find that, right? And my response, your honor, is that the legally relevant inquiry is whether the officer's subjective belief... Well, unmistakably clear means that they figured it out. What else could the judge mean when it says she made it unmistakably clear to the officer? How is that not that the officer got it? I think that the judge specifically recited the language that she remembers hearing that was the basis for that belief, which was the three words, okay, I will. I'm just looking at this language. She made it unmistakably clear to the officer. How are we to assume something other than the officer figured it out? That's got to be what the district court is assuming. Maybe the district court didn't have facts to assume that, but if that's what the district court assumes, then Johnson v. Jones tells us that's where you go from there. Do you have an argument that's consistent with the officer had it made clear to him that this is what she was doing? Do you win or do you lose if we assume that that's the fact? Could you restate that? I'm sorry. Let's assume for purposes of this appeal, assume that the officer knew that she was going to the hospital to deliver a baby and conveyed to her that he was following her to the hospital and providing her an escort. If you assume those things, which it seems to me the district court assumed, what is your argument? Then my argument shifts to the clearly established aspect. Please do that for me. I don't want to speak for my fellow lawyers. Please do that. It's tough then once you do that, isn't it? That's the problem I'm having with this case. It's tough when you make those assumptions. It seems like that's what the district court was assuming. From our perspective, Your Honor, it also seemed that the district court was taking things entirely from the doctor's perspective. They're a district court. That's what we're not supposed to say. I see Your Honor's point and I see the quandary the court finds itself in. The third point then is whether under the law of qualified immunity the law was made sufficiently clear such that I believe, if I can recite the language, such that every similarly situated reasonable official in those circumstances would understand that the actions were wrong. That's the standard for qualified immunity. Our argument is that the district court didn't engage in that part of the analysis. There's three areas that I would focus on specifically that we would put forward as three areas that are not clearly established. The first is, and we mentioned this in our briefs, that there's no law regarding when an officer or when anybody, from whatever perspective, would understand an interaction with a traffic stop to be over. We cited one state law case. We cited a state law case, but those almost always are regarding when a person, the suspect felt comfortable leaving the stop based on, for determination of whether the interaction was consensual. There are no cases in the qualified immunity area regarding the delimitations of a traffic stop. And so our argument is that, number one, that's not clearly established. And he was still standing there and he didn't understand that he'd given, there's no law that says what explicit permission is and that's not clearly established. What else does he need to write a speeding ticket that he was already given by the police? At that point, he'd not even been back to his patrol car to run her license. It was an out-of-state license. I'm sure he needed to check whether it was valid. The facts are that he'd not even had a chance to run that. So that would obviously be one. Thank you, counsel. We'll hear from your opponent. Good morning, Your Honors. Good morning. Mike Schweigert, National Bar, representing Plaintiff Dr. Terry Wynn, M.D. Nice to be back in Cincinnati. It's been a couple of years. All 1983 cases before this court tell a story. And in a nutshell, this case tells the following story. An OBGYN rushed to the hospital to deliver a baby, was stopped on the way by a police officer, continued on to the hospital after telling the uninterested police officer where she was going and what she was doing, and was arrested without probable cause, primarily for evading arrest, and was suffered from the use of excessive force during the arrest. I had a long spiel about the jurisdictional deficiencies in this appeal, but I think the court did an admirable job of discussing with opposing counsel. In short, this court lacks jurisdiction to hear this appeal because the— We can still look at these facts and see whether they state a constitutional violation that's clearly established. Well, then that's the— So there's jurisdiction on the appeal. Okay. It's just—isn't there? You want to throw the whole appeal out? I would say this. The appellant has taken the position that they can modify the facts found by the district court because they're either immaterial or something else, and they cite to this Grinder-Burdine case. That case is in a posit, and so is the Chappell case. We've repeatedly, over the years, seen cases where factual arguments are thrown into interlocutory qualified immunity appeals. What we've consistently done for years now is put the contested facts aside and looked at the legal issue on the facts as the district court found them most favorable to the relevant party. And, Your Honor, using that approach, using that— But we've always held that there's jurisdiction to do that, unless there is no such issue at that point. For the purposes of judicial economy, I agree that the court should exercise jurisdiction, applying the facts as found by the district court, and applying those facts as found by the district court, genuine issues of disputed material fact exist that preclude qualified immunity for Chad Estes on each of the Fourth Amendment claims. The first one— So let's ask about these facts. Why is the fact that she made it clear that she was going to the hospital to deliver a baby excuse her from being arrested for crimes that he observed her committing? Well, first of all, I would argue, and I believe that the district court found that a reasonable juror could determine that she was not evading arrest in a criminal sense, because who evades arrest by telling the police officer where you're going and inviting him to follow you? That's just telling him, I need to get to the hospital. That, coupled with the other— But that could still be a violation of that crime. It could be. You're saying he couldn't arrest her for that, but she's just saying, I'm a doctor. I'm going to deliver a baby. Goodbye. And here's the hospital's address. Goodbye. I mean, if he legitimately stopped her, there's no doctor's privilege not to be arrested. But he stopped her for speeding. He didn't stop her for evading arrest. And in fact, the only judicial process— Right, but before that was resolved, she left. He knew she was leaving, because we have to assume that. He knew why she was leaving. We have to assume that. But those don't seem to be legal excuses to me. There was a lot of back and forth about the facts of whether he knew. But I'm assuming he knew, because that's what the district court assumed. He knew she was going to the hospital to deliver a baby. That's one way to articulate it, yes? Another way would be that Officer Estes did not have to keep her there while her patient was waiting to deliver a baby. He could have accompanied her to the hospital. He could have double-timed it. He could have not dilly-dallied while he waited in the car, and she waved her arm out to hurry him up. There were a lot of things that he could have done. Those are all he probably should have. Indeed, it looks like he got disciplined for not doing them. But the question is whether he was required by the law to do them, by clearly established law to do them. Maybe we would like to think that officers would exercise their discretion and facilitate a doctor getting to the hospital. But I'm wondering what the law is that says he has to do that when he's stopped her for speeding and still has her driver's license, and she leaves. But she tells him where she's going, but that doesn't mean you can leave when the officers stop you like that, does it? I would say that the answer is that it's clearly established that Dr. Wynn's professional obligations and duties should have been taken into consideration by Officer Estes in his determination of how to handle this traffic stop. I do not believe she was in a custodial situation. I do not think she was under arrest, and I don't think that the case law cited by the appellant in their brief indicates that she was under arrest during the traffic stop. What is the law that requires her to remain in a custodial situation? That is a question that the appellant has never properly described. It's the law that was cited here. She was arrested for evading – what was she arrested for? Primarily for evading arrest. Is that a crime? It's a felony according to Tennessee state statute. All right, so it's Tennessee state statute is the answer to Judge Donald's question. You'd have to figure out whether it fit within that, I suppose, but that's the basis for it. She wasn't stopped for evading arrest. Evading arrest assumes there's something to arrest her for. Under arrest, she's not under arrest. For me, the application that's being made to evade arrest is a stop. Well, it's a stop that requires probable cause. There's no dispute that the stop – that there was probable cause for the initial traffic stop. That has never been in dispute. But if he stops her, she can't just leave. She said, oh, you've stopped me for speeding. Goodbye. That's not criminal in Tennessee. There are all sorts of situations that one can imagine in which a traffic stop ceases to be a traffic stop due to exigent circumstances. I'm not talking about that. I'm talking about a pure traffic stop. They stop you for speeding. They say, ma'am, you were going 70 and at 60 miles an hour. Please give me your license plate, your license. The license is given, and then they drive off. You're saying that's not criminal in Tennessee? Not in this situation, no. Well, I'm talking about my situation. In your situation? The one I just described. Perhaps. The answer is perhaps. Why? Why? Because – If she's not technically under arrest, she can just drive off. I just can't imagine that's Tennessee law. No, because the different circumstances, such as Officer Estes having knowledge of where she was going and why, all must be considered in the reasonableness of the arrest. So when a policeman stops someone and says, you've been speeding, give me your license, you give him the license, and you say, I'm going to 1930 Bryant Street in Cincinnati and drive off? I just can't believe that's the – It may not be likely, but a reasonable juror could determine that based on the circumstances. But I thought you were saying categorically it's not a crime because he's not under arrest, because there aren't exigent circumstances. No, I would say that the traffic stop – That seems to be what you're saying, is that even though that can be criminal maybe, if you're going to deliver a baby, it's different. And I'm just asking where the law is that says that. There's a dearth of law. It's a dearth of law. A dearth of law, and you can't sue. Well, there's still the excessive force claim, which is – Well, all right, then let's talk about the excessive force claim. Okay. Dr. Wynn is a small female. Chad Estes can bench press 400 pounds and is approximately 240 pounds. He threw her against the hood of her car, of his squad car, and exercised excessive force in doing so. She's a medical doctor. She was not kicking, biting, screaming, fighting. She was not pushing back. He threw her against the hood of his squad car. What actually did he do to her? Swinging her – He threw her against the car and exercised excessive force on him. And that second call, the fact of the matter, the second call – When he grabbed – The entire course of the arrest from when he initially grabbed her coming out of the vehicle, using an armbar technique to escort her over to his car, twisting her arm, then, in my client's words, slinging her against the front of his squad car and then handcuffing her and taking her around to the side of his squad car to put her in the back seat. She was not resisting arrest in that she was not flailing about. She was not punching. She wasn't biting, scratching, doing any of the things that the cases cited by the appellant in which qualified immunity was appropriate. None of those facts are present here. All she did was – And he yelled at her, you think you can do anything you want just because you're a doctor, as he's arresting her. So he knew that she was not a threat to anybody. He knew that she was a medical doctor. I thought that he claimed that he didn't know that she was a doctor. She never told him. That's what he claims, but – He was a medical doctor. You're saying that later he acknowledged that she was a doctor? The witness testimony is that during the arrest, Dr. Wynn remembers Chad Estes saying, you think you can do anything you want because you're a doctor, during the arrest. But he denies that. Well, there's – I think his position is that he didn't know that she was a doctor  even though she was dressed in hospital attire and had surgical scrubs. He didn't see it or know it. It is definitely his testimony that he didn't understand that she was a doctor at that point. Okay. I don't remember specifically – The district court assumed that he did understand it. Well, and then the district court also said that there was a disputed issue of – Well, in regard to the excessive force, I guess we get back to district court opinion. Again, page 16, the district judge says, further, while she suffered relatively minor injuries during the arrest, there is a question of fact as to whether there was a need for the force applied to that, according to Dr. Wynn, including being slammed against the cruiser and being pinned there for several minutes. So those are the slamming into the car is assumed by the district judge. And we believe that the district court got it precisely correct. In closing, I would also point out that – In short, a reasonable juror can find that the arrest lacked probable cause and that Estes used excessive force in accomplishing that arrest. Now, the appellant is taking the position that there has to be, in order for a finding of no qualified immunity, there has to be a situation where no reasonable officer can understand that what he or she was doing could be wrong. And that's sort of accurate, but not quite. The issue is whether a reasonable jury can determine that Officer Estes acted unreasonably in either effectuating the arrest or in the use of force. I absolutely agree with that. And I would point out what the district court pointed out in terms of the clearly established wrong for both the arrest and the excessive force. And I want to find the exact quote and cite, because I thought it was excellent. Well, I'm running out of time. But the gravamen of the idea is that although broad statements of the law, such as excessive force violates the Fourth Amendment, are not always appropriate, there are plenty of times where broad statements are appropriate statements of the law to put a reasonable officer on notice of what is and is not lawful. This is one of those situations. Just because there's not a previous case on all four corners doesn't mean that Officer Estes is entitled to qualified immunity. Thank you. Judge Donald, I wanted to answer your question about what the status was during the initial traffic stop. And Judge Rogers, you asked several questions about that as well. I believe that we addressed that in pages 33 and 34 of our brief. It is, in fact, an arrest under Tennessee statute. What it is is if the suspect signs the citation, then that is sufficient in lieu of an arrest. If they don't sign the citation, then they can take them to a magistrate immediately. So that's the law on that issue. You can't just depart during that process. That's correct. That's against what law? Well, that's against the two statutes that we discuss in that passage, are TCA 55-10-207 and 55-10-207. So unsurprisingly, you can't just take off while you're going through this process without violating some further law under Tennessee. That's correct, Your Honor. And at the very least, it's not clearly established that one could. The only other point that I would make, there was one authority that did not get the mention that it could, the discussion that it could have in our brief. That case is Wysong v. City of Heath. That's 260 Federal Appendix 848. That goes to several of the issues regarding whether it was clearly established regarding force and on the issue of What about the force, though? You can't use unreasonable force, and you don't have to have it be very specific. And the district court did say that she was slammed up against a cruiser and been there for several minutes and that when that happened, he knew that she was going to the hospital to deliver a baby. If you accept those facts, wouldn't a jury find unreasonable force? Not that you accept them, but if you accept them. Sure. I think one of the issues has to do with, and it's not merely whether the officer believed a personal threat. It was the severity of crime, the personal threat, and whether fleeing or evading. That's why I added this arrest makes it seem like a not very serious crime. Sure, you shouldn't evade arrest, but it's not as serious when you're going to deliver a baby, the argument goes. So therefore, in the context of this case, slamming her up against a cruiser and pinning her there for several minutes, far from whether the district court was correct in assuming that, that's what the district court assumed it seems to be. Why isn't that a clearly established violation? Well, as your Honor knows, clearly established is often still very factually specific in the circumstances. And there are lots of cases where merely the suspects kind of fidgeting or not providing the hand that was asked for or any of these things are sufficient to merit the speedy handcuffing of a suspect. Yeah, but this is more than speedy handcuffing, it appears. At least the district court seems to assume that it was more than speedy handcuffing. It depends on how one interprets that, yes, Your Honor. Thank you. So what's your answer then? Are you conceding the point that excessive force does go to the jury here? No. Well, why not? Well, it's because, and I apologize for glossing over this point, but the cases regarding, well, two things, Your Honor. One is the qualified amenity analysis regarding excessive use of force is very factually specific. Okay, well, if it's factually specific, I think it's a jury question then. I mean, that's why we have juries. I don't know if that will help you. If it rises and falls on the facts, the judge is correct to send it to the jury. It's still a question of law of whether it's clearly established such that an officer would know that. Okay, that's a different argument. Okay, so what's not clearly established? It's clearly established that excessive force violates the Constitution. Of course. So what's not clearly established here? Well, I think our argument would be that taking the version of the facts most favorable to the plaintiff, that she jumped out of the car and ran in the opposite direction from him. When during the traffic stop, she had said, follow me to the hospital and we'll work everything out. But when she gets there, she darts off in the other direction. She doesn't pay attention, pays him no heed. And under those circumstances, he came up behind her quickly, slung a handcuff on her, took her over to the police car, and handcuffed her behind the back. It's those facts of her not acknowledging his presence in light of the conversation that she alleges that they had at the traffic stop that makes this not clearly established regarding whether his force was excessive. What you left out is the slamming into the car, which the district judge found for purposes of the motion, and also for leaving her slammed in there for several minutes. If we add that to the equation, do you concede it's excessive force, at least the issue for the jury? No, Your Honor. Why not? Well, for one thing, it was also undisputed that the entire encounter only took five minutes from the time he called in the initial traffic stop at 921 until 926 when she was already in the back of the patrol car. Why would that be? It is among the factors that are relevant in evaluating the amount of force. This goes— He didn't have an act of excessive force in the last 30 seconds, I mean. Of course, but certainly the issue of gratuitousness, which is something that is generally emphasized in this court's jurisprudence. And so the issue of whether she—all of that force was before she was actually secured, and none of it was after, and that's one of the primary issues in determining factors and whether it was excessive or not as well. Thank you, Your Honor. Thank you, counsel. The case will be submitted.